**NO. 23-1450**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**SUZANNE FOX POPPER,**
**as Executrix of the Estate of Janice Fox,**

*Plaintiff – Appellant,*

v.

**HARTFORD FINANCIAL SERVICES GROUP, INC.;**
**HARTFORD LIFE AND ACCIDENT**
**INSURANCE COMPANY,**

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**AT WILMINGTON**

———————————

**BRIEF OF APPELLANT**

———————————

**Steven D. Corriveau**
**H. Forest Horne, Jr.**
**MARTIN & JONES, PLLC**
**4140 Parklake Avenue**
**Suite 400**
**Raleigh, NC  27612**
**(919) 821-0005**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _23-1450_       Caption: _Suzanne Popper v. Hartford Fin. Serv. Grp., Inc. et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Suzanne Fox Popper_
(name of party/amicus)

who is _____Plaintiff_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                        ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____    Date: 5/5/2023

Counsel for: Plaintiff Suzanne Popper

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUES .............................................................. 1

STATEMENT OF THE CASE .................................................................. 2

    A.    Parties and Summary Allegations ................................................ 2

    B.    Defendants Insured Mrs. Fox's Life if Her Death was Caused
        by a Covered Accident .......................................................... 3

    C.    Plaintiff's Accidental Death Benefits Claim was Properly
        Submitted to Defendants Following Mrs. Fox's Death........................ 4

    D.    The Statutory Definitions of the Policy Terms Included within
        Plaintiff's Complaint Establish that Mrs. Fox was a Pedestrian .......... 6

    E.    The District Court Granted Defendants' Motion to Dismiss. .............. 7

SUMMARY OF THE ARGUMENT .................................................... 8

ARGUMENT ............................................................................... 9

    I.    Standard of Review .................................................... 9

    II.    Discussion of the Issues ................................................ 10

        A.    Plaintiff's Entitlement to Accidental Death Benefits is
            Reasonably Clear .................................................... 10

        B.    Plaintiff's Allegations Establish a Valid Breach of
            Contract Claim .................................................... 14

        C.    Plaintiff's Allegations Establish a Valid Unfair and
            Deceptive Trade Practices Claim ................................. 17

i

1.    The Elements of an Unfair or Deceptive Trade Practice Claim..............................................................17

2.    Plaintiff's Allegations Support an Unfair or Deceptive Trade Practice Claim ....................................19

3.    Unfair or Deceptive Trade Practices Under § 58-63-15(11).......................................................................21

4.    Factual Allegations Supporting Plaintiff's Unfair and Deceptive Trade Practice Claim Under § 58-63-15(11)...................................................................22

      a.    Defendants' Violation of § 58-63-15(11)(d) ........23

      b.    Defendants' Violation of § 58-63-15(11)(f) .........25

5.    Proximate Cause and Damages ....................................26

CONCLUSION....................................................................................27

CERTIFICATE OF COMPLIANCE ....................................................29

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*ABT Bldg. Prod. Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh*,
472 F.3d 99 (4th Cir. 2006)................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................10

*Biltmore Ave. Condo. Ass'n, Inc. v. Hanover Am. Ins. Co.*,
2017 WL 927259 (W.D.N.C. Mar. 8, 2017), *aff'd*,
706 F. App'x 144 (4th Cir. 2017)....................................................19

*Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*,
278 F.3d 401 (4th Cir. 2002).............................................................9

*Coleman v. Maryland Court of Appeals*,
626 F.3d 187 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)..............14

*Dalton v. Camp*,
353 N.C. 647, 548 S.E.2d 704 (2001) ........................................17, 19

*DENC, LLC v. Philadelphia Indem. Ins. Co.*,
32 F.4th 38 (4th Cir. 2022)..............................................................21

*Elliott v. Am. States Ins. Co.*,
883 F.3d 384 (4th Cir. 2018)...........................................................21

*Ellis v. Louisiana-Pac. Corp.*,
699 F.3d 778 (4th Cir. 2012)...........................................................20

*Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*,
351 N.C. 293, 524 S.E.2d 558 (2000) ............................................14

*Gray v. N. Carolina Ins. Underwriting Ass'n*,
352 N.C. 61, 529 S.E.2d 676 (2000) ........................................22, 26

iii

*Hall v. Virginia*,
　　385 F.3d 421 (4th Cir. 2004)............................................................9

*Johnson v. Mueller*,
　　415 F.2d 354 (4th Cir. 1989)............................................................9

*Kenney Properties, Inc. v. Philadelphia Indem. Ins. Co.*,
　　2022 WL 2760007 (E.D.N.C. July 13, 2022)...................................21, 22, 23

*Marshall v. Miller*,
　　302 N.C. 539, 276 S.E.2d 397 (1981) ............................................18

*Mazza v. Med. Mut. Ins. Co. of N. Carolina*,
　　311 N.C. 621, 319 S.E.2d 217 (1984) ............................................13

*Miller v. Ensley*,
　　88 N.C. App. 686, 365 S.E.2d 11 (1988)........................................17

*Mylan Lab'ys, Inc. v. Matkari*,
　　7 F.3d 1130 (4th Cir. 1993) ...........................................................9

*Pearce v. Am. Def. Life Ins. Co.*,
　　316 N.C. 461, 343 S.E.2d 174 (1986) ............................................18

*Piedmont Natural Gas Company, Inc. v. Mallard Creek Associates #1, LLC*,
　　2022 WL 10219786 (N.C. App. Oct. 18, 2022) .............................16

*Poor v. Hill*,
　　138 N.C. App. 19, 530 S.E.2d 838 (2000)......................................14

*Randall v. United States*,
　　30 F.3d 518 (4th Cir. 1994).......................................................9-10

*Reg. v. White*,
　　358 N.C. 691, 599 S.E.2d 549 (2004) ............................................13

*Rogers v. Jefferson-Pilot Life Ins. Co.*,
　　883 F.2d 324 (4th Cir. 1989).........................................................9

*Rosenthal v. Perkins*,
　　42 N.C. App. 449, 257 S.E.2d 63 (1979)........................................18

*SciGrip, Inc. v. Osae*,
    373 N.C. 409, 838 S.E.2d 334 (2020) ..........................................................26

*Spartan Leasing Inc. v. Pollard*,
    101 N.C. App. 450, 400 S.E.2d 476 (1991).................................................17

*Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*,
    276 N.C. 348, 172 S.E.2d 518 (1970) ..................................................13, 16

**Statutes:**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1332(a)(1) ...........................................................................................1

N.C. Gen. Stat. § 20-4.01 ....................................................................................24

N.C. Gen. Stat. § 20-4.01(13) ..........................................................................7, 11

N.C. Gen. Stat. § 20-4.01(32) ..........................................................................7, 11

N.C. Gen. Stat. § 20-4.01(32)(a)(1) ...............................................................11, 12

N.C. Gen. Stat. § 20-4.01(46) ...............................................................................6

N.C. Gen. Stat. § 58-63-15 ..................................................................................21

N.C. Gen. Stat. § 58-63-15(11) ....................................................................*passim*

N.C. Gen. Stat. § 58-63-15(11)(d) ...............................................................*passim*

N.C. Gen. Stat. § 58-63-15(11)(f) ................................................................*passim*

N.C. Gen. Stat. § 75-1.1 ..............................................................................*passim*

N.C. Gen. Stat. § 75-1.1(b) .................................................................................17

N.C. Gen. Stat. § 75-16.............................................................................17, 26

**Rules:**

Fed. R. Civ. P. 8(a)(2)..................................................................9

Fed. R. Civ. P. 12(b)...................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................1, 7, 9

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of North Carolina has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (JA13). This Court has jurisdiction under 28 U.S.C. § 1291 because Appellant Suzanne Fox Popper, as Executrix of the Estate of Janice Fox, timely appealed from the District Court's final judgment granting Appellees' Rule 12(b) motion to dismiss, filed April 18, 2023. (JA139).

## STATEMENT OF THE ISSUES

Suzanne Fox Popper, in her capacity as the Executrix of the Estate of Janice Fox ("Plaintiff"), filed the underlying action for breach of contract and unfair and deceptive trade practices against the named Defendants after Defendants refused to pay accidental death benefits pursuant to an insurance policy that Janice Fox purchased years before her accidental death. Application of the policy depends on whether Mrs. Fox was a Pedestrian, as defined by the policy, at the time of the accident which is the subject of this claim. Plaintiff contends that Mrs. Fox was a Pedestrian. Defendants argue that she was not a Pedestrian and that benefits are not payable. The issues before this Court are whether the District Court erred in granting Defendants' Rule 12(b)(6) Motion dismissing Plaintiff's complaint and whether Plaintiff's complaint failed to state a claim upon which relief may be granted.

1

## STATEMENT OF THE CASE

**A.     Parties and Summary Allegations.**

Janice Fox was struck and killed by a motor vehicle on April 5, 2022, while walking to her car in the parking lot of New Hanover Regional Medical Center in Wilmington, North Carolina. (JA18-20). Years before the accident, Mrs. Fox had purchased a life insurance policy, issued by Defendants, which provided a benefit if her death was caused by a "Covered Accident." (JA34). The covered incidents specifically included "Motor Vehicle/Pedestrian" accidents. (JA34). After Mrs. Fox was struck by a motor vehicle while walking through an area designed for vehicular traffic, Plaintiff timely submitted a claim to Defendants for "Accidental Death Benefits" arising out of the April 5, 2022 incident. (JA45-47).

By letter dated June 29, 2022, Defendants informed Plaintiff of their determination that Mrs. Fox was not a "Pedestrian" and therefore benefits were not payable under the policy. (JA55). The policy defined Pedestrian as a covered person while "they are standing or walking on an open public street or highway." (JA56). However, the policy did not define "open public street" or "highway." Plaintiff submitted an appeal, citing the North Carolina statutory definitions of "street" and "highway," under which Mrs. Fox would be considered a Pedestrian. (JA107). Defendants disregarded those definitions and reiterated their denial of the accidental death benefits by letter dated August 18, 2022. (JA110).

2

Plaintiff filed a complaint in the Eastern District of North Carolina on August 19, 2022, asserting two claims for relief: Breach of Contract and Unfair and Deceptive Trade Practices. (JA5-14). Each of those claims was based on North Carolina law, under which Mrs. Fox was a Pedestrian at the time of the April 5, 2022 accident, and the concept that statutory definitions should be given preference over subjective standards for undefined policy terms, such as "the meaning which they have for laymen," a standard clearly subject to change depending on the speaker. (JA119). The factual allegations supporting Plaintiff's claims, including those within the underlying complaint, are summarized below.

**B.      Defendants Insured Mrs. Fox's Life if Her Death was Caused by a Covered Accident.**

In approximately 2016, if not earlier, Mrs. Fox purchased a life insurance product called "The AAA Classic Care Accident Insurance Rewards Plan" (the "Plan"). (JA25). Benefits under the Plan were funded by Policy Number ADD-11383 (the "Policy"), issued by Defendants to AAA Carolinas. (JA28). The Policy insured Mrs. Fox's life in the event that her death was caused by a covered accident. (JA34). The Policy and the Plan were governed by terms, conditions, and definitions that Defendants chose to include within the corresponding Certificate of Insurance (the "Certificate"). (JA28; JA76-86). Mrs. Fox timely paid premiums to Defendants for years, and the Policy remained effective on the date of her death. (JA7).

3

**C.    Plaintiff's Accidental Death Benefits Claim was Properly Submitted to Defendants Following Mrs. Fox's Death.**

On April 5, 2022, Mrs. Fox was walking through the New Hanover Regional Medical Center parking lot, in an area that was open to the public for vehicular traffic.  (JA18-20).  While walking to her car, Mrs. Fox was struck from behind by an F-150 pickup truck, knocked to the ground, and then driven over by the truck.  (JA20).  The driver reportedly stated that she never saw Mrs. Fox before striking her and driving over her.  (JA20).  Resuscitation attempts were made and failed, and she was pronounced dead at the accident scene.  (JA20).  The corresponding police accident report correctly identified Mrs. Fox as a "Pedestrian."  (JA18).  Her death certificate confirmed the cause of death as multiple blunt force injuries and "pedestrian struck by vehicle."  (JA22).

Plaintiff timely submitted a claim to Defendants following the April 5, 2022 accident.  (JA45-48).  The governing Insurance Certificate guaranteed payment of accidental death benefits in the event that Mrs. Fox sustained a fatal injury in a Covered Accident, resulting in loss of life within ninety days.  (JA29).  The policy definition of "Covered Accident" included "Type C: Motor Vehicle/Pedestrian Accident," which applied when "You or Your Dependents are a Pedestrian or the licensed operator of or passenger on a Motor Vehicle."  (JA34).  Since Mrs. Fox was neither operating nor riding in a motor vehicle at the time of the accident, Plaintiff's entitlement to the accidental death benefits rested on Mrs. Fox's standing as a

"Pedestrian."   The Certificate defined Pedestrian as an insured while "they are standing or walking on an open public street or highway."  (JA35).

Plaintiff's claim was denied by Defendants through correspondence dated June 29, 2022.  (JA55-58).  In their denial, Defendants alleged that Mrs. Fox was not a "Pedestrian" because she was struck while walking in the parking lot of a hospital, rather than an open public street or highway.  (JA57).  However, the Certificate did not define the terms "open public street" or "highway." [1]  Defendants' denial letter did not define or otherwise expound on the meaning of those terms.  The denial also failed to explain why a parking lot – which was open to the public for vehicular traffic – did not qualify as an open public street or highway.  Instead, Defendants simply concluded that Mrs. Fox was not injured while "standing or walking on an open public street or highway."  (JA57).  On that basis, Defendants alleged that Mrs. Fox was not a Pedestrian and that benefits were not payable under the policy.  (JA57).

Through counsel, Plaintiff timely appealed Defendants' denial on July 21, 2022.  (JA106-109).  Plaintiff directly addressed Defendants' argument that Mrs. Fox did not qualify as a Pedestrian in her appeal letter.   Specifically, Plaintiff

---

[1] The Certificate includes a definition of "Interstate Highway," as that term is used within the definition of "Covered Accident, Type B: Interstate Highway Motor Vehicle Accident."  However, no definition is provided for the terms "Highway," as used within the definition of "Pedestrian," or "Street."

explained that "open public street" and "highway" were <u>not defined</u> by the Certificate, but those terms <u>are defined</u> by North Carolina's General Statutes. (JA107-108). As demonstrated in Plaintiff's appeal letter and in further detail below, the relevant statutory provisions establish that Mrs. Fox was walking on a "Street" or "Highway" when the accident occurred. (JA107). Moreover, the location of the April 5, 2022 accident qualified as a "Public Vehicular Area" under North Carolina law, a term which specifically includes the parking lot of a public or private hospital. (JA108). Despite the clear meaning of those terms under North Carolina law, Defendants maintained their denial of this claim through correspondence dated August 18, 2022. (JA110-112).

**D.  The Statutory Definitions of the Policy Terms Included within Plaintiff's Complaint Establish that Mrs. Fox was a Pedestrian.**

Plaintiff's complaint was filed on August 19, 2022, asserting claims for breach of contract and unfair and deceptive trade practices. (JA5-14). The complaint alleged that Mrs. Fox was a Pedestrian, as defined by the Certificate, because she was walking on a street or highway when she was struck and killed on April 5, 2022. (JA10). Since the policy did not define "open public street" or "highway," Plaintiff referenced the North Carolina statutory definitions of "Street" and "Highway," which "are synonymous." N.C. Gen. Stat. § 20-4.01(46). "Highway" is defined as the "entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter

6

of right for the purposes of vehicular traffic." N.C. Gen. Stat. § 20-4.01(13). Additionally, a "Public Vehicular Area" is an area "used by the public for vehicular traffic at any time," specifically including a "parking lot upon the grounds and premises of any…public or private hospital." N.C. Gen. Stat. § 20-4.01(32). Based on those definitions, the area where Mrs. Fox was struck and killed clearly qualifies as a street or highway, rendering her a Pedestrian.

**E.    The District Court Granted Defendants' Motion to Dismiss.**

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) was filed on October 17, 2022. Defendants based their Motion on the argument that Mrs. Fox was not a Pedestrian because she was struck while in a parking lot, and not on a public street or highway. (JA73). In their Memorandum, Defendants argued that "nontechnical words," such as street and highway, should be "given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." (JA72).

On April 18, 2023, the district court granted Defendants' motion to dismiss, concluding that the hospital's parking lot was not an "open public street or highway" under the policy. (JA126). The district court held that the parking lot did not constitute an open public street or highway based on what it described as "common sense and ordinary understanding." (JA135). Ultimately, the court rejected use of the statutory definitions of the terms in question, instead favoring what it found to be the "ordinary meanings of words." (JA136).

## SUMMARY OF THE ARGUMENT

Plaintiff is entitled to the accidental death benefits at issue because Mrs. Fox was a Pedestrian who was killed in a Covered Accident. "Pedestrian" is defined by the Certificate as a covered person while "they are standing or walking on an open public street or highway." The Certificate does not define "open public street" or "highway." Plaintiff respectfully submits that the Court should look to the legal definition of those terms when analyzing the insurance policy in question.

The parking lot where Mrs. Fox was struck and killed was a street or highway as those terms are defined by North Carolina's General Statutes. That area was also, by definition, a Public Vehicular Area. However, the district court rejected the use of statutory definitions in favor of what it found to be the "common sense and ordinary understanding" of the terms in question. Plaintiff respectfully contends that statutory definitions should be favored as an objective legal standard. However, common sense also dictates that a hospital parking lot, where vehicles are rapidly arriving and departing, would be referred to as "the street" in "ordinary speech."

As established below, any ambiguity as to the meaning of street and highway is to be resolved in Plaintiff's favor. However, it does not appear that was the case. Mrs. Fox's reasonably clear status as a Pedestrian on April 5, 2022 and the denial of accidental death benefits establishes both a valid breach of contract claim and claims for unfair and deceptive trade practices.

8

## ARGUMENT

### I. Standard of Review.

This Court reviews a district court's dismissal under Rule 12(b)(6) *de novo*. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Accordingly, such motions "should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). The Fourth Circuit has "long held that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a <u>certainty</u> that the plaintiff would be entitled to no relief <u>under any state of facts</u> which could be proved in support of his claim." *Id*. (emphasis added) *citing Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1989).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P., Rule 8(a)(2). A motion to dismiss tests the legal sufficiency of the complaint, rather than the facts alleged in support of it. The court "must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff." *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004) *quoting Randall v. United States*, 30

9

F.3d 518, 522 (4th Cir. 1994). While the plaintiff is obligated to provide "more than labels and conclusions," the Supreme Court has confirmed that "detailed factual allegations" are not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

## II. Discussion of the Issues.

### A.    Plaintiff's Entitlement to Accidental Death Benefits is Reasonably Clear.

Plaintiff's claims for breach of contract and unfair and deceptive trade practices are both grounded on Mrs. Fox's status as a Pedestrian at the time of the accident. In the complaint, Plaintiff alleges that Mrs. Fox was struck and killed while she was "walking in the vehicle travel portion" of a public parking lot "that was open to the public and designed and intended for vehicular traffic." (JA8). Plaintiff further alleges that area of the parking lot where Mrs. Fox was walking "was open to the use of the public vehicles as a matter of right for purposes of vehicular traffic." (JA9). Those well-pled allegations, which must be accepted as true at this stage, clearly describe a "street" or "highway" as those terms are defined by North Carolina law.

10

Street and highway are defined by North Carolina's General Statutes as "The entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic." N.C. Gen. Stat. § 20-4.01(13). Notably, the term "highway," as used within the definition of Covered Accident, does not refer to an "Interstate Highway," as that term is defined separately within the Certificate. Areas which are "used by the public for vehicular traffic" are further defined as Public Vehicular Areas. N.C. Gen. Stat. § 20-4.01(32). The parking lot of "any public or private hospital" is a Public Vehicular Area. N.C. Gen. Stat. § 20-4.01(32)(a)(1). Plaintiff cited those statutory definitions in both her Appeal letter and the Complaint. (JA9; JA107-08). The significance of those terms is clear: because Mrs. Fox was walking on a street or highway under North Carolina law, she should be considered a Pedestrian under the policy.

Plaintiff's factual allegations, combined with the above-referenced statutory provisions (and common sense), clearly establish that Mrs. Fox was a Pedestrian <u>as a matter of law</u>. In North Carolina, a Street or Highway is an area "<u>open to the use of the public as a matter of right for the purposes of vehicular traffic</u>." N.C. Gen. Stat. § 20-4.01(13). Plaintiff alleges that Mrs. Fox was struck while "walking in an area of the parking lot that was <u>open to the public and designed and intended for vehicular traffic</u>." (JA8). That area was open to the public "<u>as a matter of right for</u>

11

purposes of vehicular traffic." (JA9). Additionally, the New Hanover Regional Medical Center parking lot unequivocally qualifies as a Public Vehicular Area under North Carolina law. N.C. Gen. Stat. § 20-4.01(32)(a)(1). When Plaintiff's factual allegations are accepted as true, as they must be at this stage of litigation, the only logical conclusion is that Mrs. Fox was injured while walking on an open public street or highway, rendering her a Pedestrian. As a result, Plaintiff's entitlement to the Certificate's accidental death benefit is reasonably clear.

Finally, Plaintiff does not rely solely on the statutory definitions of street and highway. The district court cited "ordinary speech," comparing "street parking" to a "parking lot." (JA135). One could just as easily envision a parent, walking out of the hospital towards the paved area where motor vehicles are continuously arriving and departing, warning her child not to walk into "the street." The court found that a "street is a thoroughfare to get from one location to another while a parking lot is where you park your care when you arrive at a destination." (JA135). However, "common sense and ordinary understanding," cited by the court, also requires acknowledging that the area in question was not simply a parking lot, but the parking lot of a major hospital. (JA8). As such, certain vehicles, including ambulances, may not have parked there at all. Instead, the parking lot would quite literally become a "thoroughfare" for vehicles dropping off and picking up patients. At the very least, the terms are ambiguous and susceptible of multiple meanings.

12

Perhaps the most important rule of contract interpretation in this case is the "well established and universal rule is that insurance contracts will be liberally construed in favor of the insured and strictly construed against the insurer, since the insurance company selected the language used in the policy." *Mazza v. Med. Mut. Ins. Co. of N. Carolina*, 311 N.C. 621, 631, 319 S.E.2d 217, 223 (1984). When interpreting policy provisions, "all doubt or uncertainty, as to the meaning of the contract, shall be resolved in favor of the insured." *Reg. v. White*, 358 N.C. 691, 700, 599 S.E.2d 549, 556 (2004). Where an undefined term causes ambiguity, "it is to be given the meaning most favorable to the policyholder, or beneficiary, since the insurance company selected the word for use. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

Application of the above-referenced rule to this case is clear: Defendants chose not to define "open public street" or "highway" in the insurance policy that they drafted. Therefore, those terms must be given the meaning <u>most favorable</u> to Mrs. Fox. *Wachovia* at 354, 172 S.E.2d at 522. While Plaintiff contends that there is no doubt or uncertainty as to the meaning of those terms, based on their statutory definitions, any such ambiguity "<u>shall be resolved in favor of the insured</u>." *Reg* at 700, 599 S.E.2d at 556. Plaintiff respectfully submits that her claims would not have been dismissed if she had received the required benefit of this rule as it relates to the meaning of "open public street" and "highway."

13

**B.    Plaintiff's Allegations Establish a Valid Breach of Contract Claim.**

Plaintiff's complaint clearly set forth a viable claim for breach of contract. The elements of a breach of contract claim are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). At this stage, the Complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). There can be no legitimate dispute as to whether a valid contract existed, considering the "well-established principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000) (citations omitted).

The factual allegations included within Plaintiff's Complaint also establish a breach of the insurance contract at issue. The AAA Classic Care Accident Insurance Rewards Plan was a contract of insurance between Janice Fox and Defendants. (JA13). Defendants breached the contract by wrongfully denying Plaintiff's death benefit claim. (JA13). Defendants violated the terms of the insurance contract by denying Plaintiff's accidental death claim. (JA11). To deny Plaintiff's claim, Defendants utilized a hyper-technical interpretation of the term Pedestrian, which violated the clear purpose of the Policy, contradicted North Carolina law, and was

14

contrary to any common sense reading of the Policy. (JA10). Plaintiff's entitlement to accidental death benefits is clear and unambiguous. (JA10). There can be no legitimate doubt that Plaintiff has set forth adequate factual allegations supporting a breach of contract claim against Defendants.

Defendants contend that Plaintiff cannot prove a breach of contract because Mrs. Fox "was in a parking lot, not on a public street or highway" when the accident occurred. (JA73). However, Defendants make no attempt to define "open public street" or "highway," and fail to explain why the area in question does not qualify as a public street or highway. Similarly, Defendants completely ignore the statutory definitions of street, highway, and public vehicular area and simply conclude – without any authority – that the area of the parking lot where Mrs. Fox was walking is not a public street or highway.

A significant portion of Defendants' argument was devoted to reciting selective rules of contract interpretation. Plaintiff agrees that "Pedestrian" is a defined term and its policy definition applies to this case. What Defendants ignored is the fact that "open public street" and "highway" were not defined by the Certificate. Contrary to Defendants' argument, the area of the parking lot in question is a street or highway, as those terms are defined by North Carolina law. Nothing within the Certificate defines those terms differently. Therefore, Mrs. Fox was a Pedestrian, as defined by the Policy, at the time of the accident.

15

When analyzing the contractual terms at issue, Plaintiff respectfully suggests that this Court should also consider the clear purpose of the Certificate: to cover accidental deaths like the one that occurred on April 5, 2022. "As in other contracts, the objective of construction of terms in the insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Wachovia* at 354, 172 S.E.2d at 522. Mrs. Fox purchased an "Accidental Death Benefit" that applied and provided a benefit in the event that a covered pedestrian was hit by a motor vehicle and died. Yet, that benefit was denied after Mrs. Fox was a pedestrian who was hit by a motor vehicle and died. Mrs. Fox was struck by a vehicle while in "an open public street," meaning a place open to the public and designed for motor vehicles to travel. The accident occurred in a "street" as defined by North Carolina law. In either case, this is the type of incident meant to be covered by the policy that Mrs. Fox purchased from Defendants.

Finally, notwithstanding the statutory definitions which Plaintiff alleges are dispositive, one must question whether benefits would have been denied if Mrs. Fox had been running or jogging instead of "walking or standing," or if benefits would have been denied had she been kneeling to tie her shoelace. Fortunately, North Carolina Courts will "apply contractual interpretation principles to avoid unjust or absurd results." *Piedmont Natural Gas Company, Inc. v. Mallard Creek Associates #1, LLC*, 2022 WL 10219786 (N.C. App. Oct. 18, 2022). Plaintiff respectfully

contends that denying benefits under these circumstances is both contrary to the coverage intended by the parties and would lead to unjust results.

## C.     Plaintiff's Allegations Establish a Valid Unfair and Deceptive Trade Practices Claim.

### 1.     The Elements of an Unfair or Deceptive Trade Practice Claim.

Chapter 75 of the North Carolina General Statutes declares unfair or deceptive practices in the conduct of any trade or commerce to be unlawful.  N.C. Gen. Stat. § 75-1.1.  A private cause of action for violations of that provision is provided by N.C. Gen. Stat. § 75-16.  "To prevail on a claim of unfair and deceptive trade practice a plaintiff must show: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991).

A trade practice is unfair if it is "unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).  "Commerce" is a broadly defined term that includes "all business activities, however denominated…" N.C. Gen. Stat. § 75-1.1(b).  Finally, the act or practice must have an "adverse impact on the individual or entity" in the form of actual damages to the individual or to their business. *Miller v. Ensley*, 88 N.C. App. 686, 691, 365 S.E.2d 11, 14 (1988).

17

What is <u>not</u> required for a valid unfair or deceptive trade practices claim is equally as important. As an initial matter, Chapter 75 claims focus exclusively on the conduct of the defendant and the effect of that conduct upon commerce, not on the conduct of the plaintiff. Second, it is not necessary to establish fraud, bad faith, or deliberate or knowing acts of deception, as "the intent of the actor is irrelevant." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Therefore, "good faith is not a defense" to an unfair or deceptive trade practice claim. *Id.* While an act or practice is "deceptive" if it has the tendency or capacity to deceive, proof of actual deception is not required. *Id.* A plaintiff is also not required to prove fraud as an element of an unfair or deceptive trade practices claim. *Rosenthal v. Perkins*, 42 N.C. App. 449, 455, 257 S.E.2d 63, 67 (1979).

In the present case, there can be no legitimate dispute that the alleged conduct was in or affecting commerce. "The business of insurance is unquestionably 'in commerce' insofar as an 'exchange of value' occurs when a consumer purchases an insurance policy" and the "people who buy insurance are consumers whose welfare Chapter 75 was intended to protect." *Pearce v. Am. Def. Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986) (citations omitted). Similarly, there can be no valid dispute as to whether Plaintiff has identified actual damages sustained as a result of the alleged conduct. Both factors were appropriately pled in the Complaint (JA11-12), and Defendants have made no argument to the contrary. Plaintiff respectfully

submits that she has also alleged conduct which qualifies as unfair or deceptive. Whether an act is unfair or deceptive is an issue of law for the court to decide. *Dalton* at 656, 548 S.E.2d at 711. For the reasons that follow, Plaintiff respectfully contends that Defendants engaged in conduct which was both unfair and deceptive, and that Defendants' Motion should not have been granted.

### 2.    Plaintiff's Allegations Support an Unfair or Deceptive Trade Practice Claim.

Plaintiff's unfair and deceptive trade practices claim pursuant to § 75-1.1 is based primarily on the allegation that Defendants refused to pay insurance proceeds under circumstances where entitlement to those funds was reasonably clear. An insurance company's refusal to pay a claim where liability is "reasonably clear" may constitute an unfair and deceptive trade practice. *See ABT Bldg. Prod. Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh*, 472 F.3d 99, 125 (4th Cir. 2006); *Biltmore Ave. Condo. Ass'n, Inc. v. Hanover Am. Ins. Co.*, 2017 WL 927259 (W.D.N.C. Mar. 8, 2017), *aff'd*, 706 F. App'x 144 (4th Cir. 2017); *see also* N.C. Gen. Stat. § 58-63-15(11)(f). As demonstrated herein, Plaintiff's entitlement to accidental death benefits is clear, especially upon review of the statutory definitions of otherwise undefined terms. Therefore, the denial of those benefits by Defendants constitutes an unfair and deceptive trade practice. At a minimum, discovery should be allowed to determine Defendants' rationale and motivation for denying an accidental death benefits claim for a pedestrian accidentally killed by a motor vehicle.

Plaintiff's factual allegations, which must be accepted as true and construed in the light most favorable to Plaintiff, establish a claim for unfair and deceptive trade practices. Plaintiff alleges that Mrs. Fox was struck and killed while walking in an area of the parking lot that was open to the public and designed and intended for vehicular traffic. (JA8). Since she was walking in a location which was, by statutory definition, a Street, Highway, and Public Vehicular Area, Mrs. Fox was a Pedestrian at the time of the accident. (JA10). Accordingly, the April 5, 2022 incident <u>clearly</u> qualifies as a Covered Accident and Plaintiff's entitlement to accidental death benefits under the Plan and the Certificate is <u>clear and unambiguous</u>. (JA10). The insurance policy at issue guarantees payment of accidental death benefits under these circumstances. Despite Plaintiff's obvious entitlement to the insurance proceeds, Defendants violated the clear purpose and terms of the Plan to deny Plaintiff's claim and in doing so acted wrongfully, willfully, and in bad faith. (JA10-11).

Defendants allege that "the crux of this case is an alleged breach of contract, which cannot support a UDTP claim." (JA65). Plaintiff acknowledges that a "mere breach of contract" is not an unfair or deceptive trade practice, without aggravating circumstances. *See Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012). However, Plaintiff's allegations are not limited to a "mere" breach of contract. Plaintiff's Complaint repeatedly alleges that insurance benefits were denied under

20

circumstances where entitlement was <u>clear and unambiguous</u>, which itself constitutes an aggravating factor. Finally, while Defendants argue that Plaintiff failed to allege facts independent of her breach of contract claim, both a breach of contract claim and an unfair or deceptive trade practice claim may arise from "the same course of conduct." *DENC, LLC v. Philadelphia Indem. Ins. Co.*, 32 F.4th 38, 52 (4th Cir. 2022) (citations omitted).

### 3. Unfair or Deceptive Trade Practices Under § 58-63-15(11).

Certain insurance practices are unfair and deceptive as a matter of law. North Carolina's Unfair Claim Settlement Practices Statute ("UCSPS"), codified as N.C. Gen. Stat. § 58-63-15(11), expressly prohibits specific "unfair practices in the settlement of insurance claims." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018). While the Statute does not include a private cause of action, "the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim," meaning that "an individual may file an independent § 75-1.1 claim, or may file a § 75-1.1 claim that relies on a violation of § 58-63-15(11)." *Id*. Either case may be brought "without the necessity of an additional showing of frequency indicating a general business practice," as required by the UCSPS. *Id*. Since "conduct that violates section 58-63-15(11) also violates section 75-1.1, a plaintiff need not independently show that the conduct was in or affecting commerce." *Kenney Properties, Inc. v. Philadelphia Indem. Ins. Co.*, 2022 WL 2760007, at *9 (E.D.N.C.

21

July 13, 2022).  However, "the plaintiff still must plausibly allege proximate cause and damages."  *Id*. at \*10.

In *Gray v. N. Carolina Ins. Underwriting Ass'n*, our Supreme Court held that while the Commissioner of Insurance has the authority to enforce the UCSPS, the prohibited acts "were designed to protect the consuming public," and that violations of such statutes may constitute unfair and deceptive practices.  352 N.C. 61, 70–71, 529 S.E.2d 676, 682 (2000).  Accordingly, <u>violations of the UCSPS are violations of Chapter 75 as a matter of law</u>, "because such conduct is <u>inherently unfair, unscrupulous, immoral, and injurious to consumers</u>."  *Id*. at 71, 529 S.E.2d at 683 (emphasis added).  That concept has been repeatedly upheld by federal courts reviewing the Statute, including the Fourth Circuit earlier this year: "Conduct that violates § 58-63-15(11) constitutes a violation of [the UDTPA] as a matter of law."  *DENC* at 50.

### 4.    Factual Allegations Supporting Plaintiff's Unfair and Deceptive Trade Practice Claim Under § 58-63-15(11).

In her complaint, Plaintiff alleged two specific violations of the UCSPS.  First, Plaintiff alleged that Defendants violated § 58-63-15(11)(d) by refusing to pay the underlying claim without conducting a reasonable investigation based upon all available information.  (JA12).  Second, Plaintiff alleged that Defendants failed to attempt in good faith to effectuate prompt, fair, and equitable settlement when liability had become reasonably clear, in violation of § 58-63-15(11)(f).  (JA12).

As demonstrated below, both alleged violations were supported by specific factual allegations, despite Defendants' arguments to the contrary. Defendants also alleged that Plaintiff's unfair and deceptive trade practice claim must be dismissed for lack of "any aggravating factors." While aggravating factors may be required in the context of Chapter 75 claims, as compared to breach of contract claims generally, the same is not true for § 58-63-15(11) claims: "In the insurance context, committing the acts or practices proscribed by N.C. Gen. Stat. § 58-63-15(11) is unfair and deceptive as a matter of law." *Kenney* at *8 (emphasis added). Moreover, Defendants' refusal to issue payment, under circumstances where liability was clear, constitutes both an "aggravating factor" and a violation of § 58-63-15(11)(f).

### a.    Defendants' Violation of § 58-63-15(11)(d).

Plaintiff's initial UCSPS claim is based on Defendants' violation of § 58-63-15(11)(d), which prohibits insurance companies from denying claims "without conducting a reasonable investigation based upon all available information." (JA12). Whether Mrs. Fox was a Pedestrian turns on whether the area in question was an "open public street" or a "highway." Defendants drafted the Certificate and chose not to define those terms. As a result, Plaintiff contends that determination of their legal meaning was required as part of a reasonable investigation of Plaintiff's claim. Defendants did not investigate the meaning of those terms under North Carolina law before denying Plaintiff's claim. (JA55-58). Plaintiff contends that

the failure to investigate and discover the statutory definitions of Street and Highway constitutes a violation of subsection (d), in that Defendants did not perform a reasonable investigation based upon all available information.  (JA12).  If Defendants had conducted a reasonable investigation, they would have discovered N.C. Gen. Stat. § 20-4.01, which defines Street and Highway and clearly establishes Mrs. Fox's standing as a Pedestrian.

Defendants' violation of § 58-63-15(11)(d) is even more egregious considering that the statutory definitions of Street, Highway, and Public Vehicular Area were specifically included within Plaintiff's Appeal letter.  (JA107-108). Plaintiff highlighted those definitions and explained why the area where Mrs. Fox was hit clearly met the definition of Street and Highway and was a Public Vehicular Area pursuant to North Carolina law.  Upon review of the Appeal, Defendants failed to meaningfully consider or investigate those terms and their provided definitions. In their denial of Plaintiff's Appeal, Defendants merely copied and pasted certain portions of the Appeal letter, including a partial definition of Public Vehicular Area. (JA110-112).  However, Defendants failed to mention or consider the statutory definitions of Street and Highway, and failed to explain why the area where Mrs. Fox was struck and killed did not qualify as either a Street or Highway.  Those repeated failures demonstrate the lack of a reasonable investigation based upon all available information, in violation of § 58-63-15(11)(d).

In their Memorandum, Defendants argued that Plaintiff's Complaint "does not identify particular deficiencies in the investigation" and that there are no factual allegations to support the accusation that Hartford's investigation was inadequate. (JA70). However, closer inspection of the Complaint reveals that Plaintiff specifically alleged that Defendants "refused to pay this claim without conducting a reasonable investigation based upon all available information, including North Carolina law, in violation of N.C. Gen. Stat. § 58-63-15(11)(d)." (JA12). Plaintiff had previously cited the statutory definitions of Street, Highway, and Public Vehicular Area (JA9), and alleged that Defendants had failed to "acknowledge the statutory definitions provided above" in their initial denial. (JA10). In other words, Defendants' investigation was inadequate and unreasonable in light of the failure to investigate the legal meaning of the terms at issue, pursuant to North Carolina law. Therefore, The Complaint plainly includes sufficient factual allegations and alleged inadequacies with regards to Defendants' investigation to support a claim pursuant to § 58-63-15(11)(d).

### b. Defendants' Violation of § 58-63-15(11)(f).

Plaintiff's second UCSPS claim is based on Defendants' refusal to pay this claim under circumstances where liability was reasonably clear, in violation of § 58-63-15(11)(f). (JA12). Plaintiff's argument on this topic has been thoroughly briefed in the preceding sections and does not need to be repeated. However, it is worth

noting that North Carolina's Supreme Court has specifically held that a violation of this subsection constitutes an unfair and deceptive trade practice: "An insurance company that engages in the act or practice of not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear...also engages in conduct that embodies the broader standards of N.C.G.S. § 75–1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Gray* at 71, 529 S.E.2d at 683 (citations omitted).

    **5.    Proximate Cause and Damages.**

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *SciGrip, Inc. v. Osae*, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020) (citations omitted). Recently, this Court held that while "plausibly alleging a violation of section § 58-63-15(11) satisfies the first two elements of a UDTPA claim, it does not satisfy the proximate cause and injury element." *Kenney* at *10. Therefore, "a plaintiff must allege a violation of section 75-1.1...and the requisite injury proximately caused by the section 75-1.1 violation to state a claim under section 75-16." *Id*.

Plaintiff has clearly alleged actual injury of at least $40,000.00 as a direct and proximate result of Defendants' refusal to issue payment of the accidental death benefits when her entitlement to those funds was clear. (JA11-12). Plaintiff has specifically asserted those damages as a direct and proximate result of both Defendants' unfair and deceptive trade practices under Chapter 75 and their violations of § 58-63-15(11). (JA12). Therefore, Plaintiff has satisfied the third and final element of an unfair and deceptive trade practice claim arising out of an alleged § 58-63-15(11) violation.

## CONCLUSION

The statutory definitions of Street, Highway, and Public Vehicular Area, along with the clear purpose of the Plan and Certificate, establish that Mrs. Fox was a Pedestrian on April 5, 2022. Plaintiff's factual allegations clearly support a breach of contract claim against Defendants. Additionally, Plaintiff's entitlement to the accidental death benefit proceeds is "reasonably clear." Defendants' denial of those proceeds constitutes an unfair and deceptive trade practice under § 75-1.1 and as a violation of § 58-63-15(11)(f). Defendants also violated subsection § 58-63-15(11)(d) by failing to consider North Carolina law as part of their investigation. Plaintiff has established both actual damages and proximate cause as a result of those unfair and deceptive trade practices. For those reasons, Plaintiff respectfully contends that Defendants' Motion should have been denied.

Respectfully submitted, this the 20th day of June 2023.

**MARTIN & JONES, PLLC**

*/s/ H. Forest Horne*
H. Forest Horne, NCSB No. 16678
Steven D. Corriveau, NCBS No. 45952
4140 Parklake Avenue, Suite 400
Raleigh, NC 27612
Telephone: (919) 821-0005
Facsimile: (919) 863-6086
Email: hfh@m-j.com
Email: sdc@m-j.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.   This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

     this document contains <u>6,608</u> words.

2.   This document complies with the typeface requirements because:

     This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

Respectfully submitted, this the 20th day of June 2023.

**MARTIN & JONES, PLLC**

<u>*/s/ H. Forest Horne*</u>
H. Forest Horne, NCSB No. 16678
Steven D. Corriveau, NCBS No. 45952
4140 Parklake Avenue, Suite 400
Raleigh, NC 27612
Telephone: (919) 821-0005
Facsimile: (919) 863-6086
Email:  <u>hfh@m-j.com</u>
Email:  <u>sdc@m-j.com</u>

*Counsel for Appellant*